F. Wendell Miller v. Commissioner.
Miller v. Commissioner
Docket No. 57727.
United States Tax Court
T.C. Memo 1957-98; 1957 Tax Ct. Memo LEXIS 153; 16 T.C.M. (CCH) 400; T.C.M. (RIA) 57098; June 20, 1957
*153 Ralph E. Davis, Esq., for the petitioner. Hunter D. Heggie, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of petitioner for the year 1952 in the amount of $303.56. The sole issue is whether petitioner received taxable income in 1952 as the result of the receipt of a certificate of added ownership of Farmers Co-Operative Elevator of Rockwell City, Iowa. Findings of Fact Some of the facts were stipulated and are found accordingly. Petitioner is an individual residing at Rockwell City, Iowa. He filed his Federal income tax return for the year 1952 with the collector of internal revenue for the district of Iowa, at Des Moines, Iowa. Petitioner in 1952 kept his books and reported his income on the cash receipts and disbursements basis. In 1952, petitioner owned farm lands in and around Rockwell City which he leased to farmers in return for shares of grain which they raised. The grain which was delivered to petitioner as rental was sold by him to elevators in the vicinity of his farms. In the calendar year 1952, petitioner was a member of the Farmers Co-Operative Elevator, incorporated *154 in 1948 under the laws of the state of Iowa as a co-operative marketing association with its principal place of business at Rockwell City, Iowa, and hereinafter referred to as "Farmers." The operations of Farmers consist of the purchase and sale of grain, feed, seed, coal, fencing material, and fertilizer, from both members and nonmembers. Farmers purchases and sells such products upon its own account, pays cash therefor, and is free to sell or hold them at its own risk. Petitioner upon the purchase of the one share of class A common stock of Farmers agreed to be bound by the corporate charter, bylaws, and whatever orders or rules the directors established. Upon joining, the members agree that Farmers may use its profits as its directors may direct. The Articles of Incorporation of Farmers provide that no person shall hold more than one share of common stock and that each stockholder is entitled to only one vote. They further provide that its directors should annually dispose of its earnings in excess of operating expenses as follows: "(a) Provide a reserve for depreciation, obsolescence, bad debts and certain losses; "(b) Add 10% of the remaining earnings to surplus until *155 surplus equals 30% of the total of all capital paid in plus all unpaid patronage dividends; "(c) Place 1% of the remaining earnings in an educational fund; "(d) Pay all accumulated dividends on preferred stock; "(e) Allocate the remaining net earnings to a revolving fund to be credited to the account of each member (referred to as deferred patronage dividends) ratably in proportion to the business he has done with Co-Operative during the year, provided, however, that no earnings could be allocated to the revolving fund if the reserve provided in (b), above, is exhausted." The Articles of Incorporation also provide that its directors may issue nontransferable certificates for deferred patronage dividends, provided that such certificates shall not mature until the dissolution or liquidation of the association, but shall be callable by it in the order of priority specified in Article VII. The revolving fund is used for day to day operations to pay obligations, to add to its capital, retire its preferred stock, and to acquire capital assets. Funds allocated to the revolving fund need not be and are not segregated from Farmers' other funds. On September 1, 1952, petitioner received *156 from Farmers a certificate of added ownership representing a revolving fund credit of $361.67. The certificate, inter alia, states that the cash payment of the patronage dividends has been deferred due to need for funds in the business program; that the money, property, and assets in the revolving fund need not be segregated from other assets; that the certificate is inferior to the rights and claims of all creditors; that the dividends are noninterest bearing; and, no assignment or transfer of the certificate shall be binding upon or recognized by the association unless prior written approval thereof has been given by the board of directors. At no time since the receipt of such certificate could petitioner have withdrawn all or any portion of the $361.67 revolving fund credit represented by such certificate. No portion of such credit was available to petitioner nor subject to his control or demand. None of the funds in the revolving fund have ever been set aside for the benefit of petitioner or any other member. Farmers operates on the basis of a fiscal year beginning June 1st and ending May 31st of the following year. Allocations to the revolving fund for each fiscal year to *157 the year ended May 31, 1953, were as follows: Year ended May 31st
Amount
1949
$ 3,629.78
1950
1,138.64
1951
7,078.34
1952
16,284.07
1953
2,481.81
No certificates of added ownership were issued to reflect the 1949 and 1950 allocations to the revolving fund, the members being advised of such allocations by letters. Certificates of added ownership were issued to reflect the allocations for the years 1951, 1952, and 1953. As of December 31, 1952, no cash payments have ever been made by Farmers of any patronage dividends. No payments were made to members out of the revolving fund until January 15, 1955. The oldest certificates outstanding as of November 5, 1956, are the 1951 certificates. Payment of the 1951 certificates is to be made in 1956. There has never been a transfer of a certificate of added ownership of Farmers. The certificates issued by Farmers, including the one received by petitioner in 1952, were in 1952 and at the time of the hearing of this proceeding subject to and subordinate to all the debts of Farmers, including a note to the Omaha Bank secured by a mortgage on all of Farmers' property. The loan agreement and such mortgage provide that *158 no payments from the revolving fund could be made without written consent of the mortgagee. In his tax return for 1952, petitioner did not report any income as a result of the receipt of that year of the certificate for added ownership in question. Respondent included the face value of the certificate in the amount of $361.67 in gross income. The certificate of added ownership issued by Farmers to petitioner in 1952 did not have, at the time of issuance, a fair market value capable of being ascertained with reasonable certainty. Opinion LEMIRE, Judge: Respondent persisting in his attempt to tax to a cash receipts taxpayer revolving fund certificates issued by a tax exempt co-operative to one of its patrons, at face value regardless of fair market value, relies upon ; , affd. , to which may be added the case of Long Poultry Farms, Inc., 27 T.C. - (March 21, 1957) (on appeal C.A. 4), decided since the filing of the briefs herein. Petitioner contends that since he reports his income on a cash basis, the cases of , *159 affd. ; ; , certiorari denied ; , appeal dismissed, , and Halladay v. United States, D.C.S.D. Cal., July 29, 1955 (unreported), , are controlling here. The respondent, on brief, concedes that the authorities on which petitioner relies support his position, but contends they were decided erroneously. The pertinent facts in the instant case are not in dispute. They are not readily distinguishable from the controlling facts found in the case of , and, it is, therefore, a decisive authority here. The respondent further argues that petitioner has failed to show that the certificate in question had no fair market value. It is noninterest bearing, is not payable at any designated date, is subordinate to all prior obligations of the co-operative, is not payable without the consent of the mortgagee, and, could not be transferred without the written *160 consent of the directors. Petitioner presented the expert opinion of two local bankers, who were familiar with the co-operative and the character of the certificate involved herein. Each testified that such certificate was not acceptable as collateral and in his opinion was not marketable. Respondent offered no witnesses on the question of value. The expert opinions expressed together with the conditions and limitations attaching to the certificate convince us that it had no ascertainable fair market value at the time of its issuance in 1952, and we have so found as an ultimate fact. On the only issue presented to us, we sustain the petitioner. Decision will be entered under Rule 50.